IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TAMMY HARVEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 17-1269-RGA |
| | : |
| NANCY A. BERRYHILL, Acting | : |
| Commissioner of Social Security, | : |
| | : |
| Defendant. | : |

## **MEMORANDUM OPINION**

Tammy Harvey, Felton, Delaware; Pro Se Plaintiff.

Eric P. Kressman, Regional Counsel, Region III, and Annie Kernicky, Assistant Deputy Regional Counsel, Office of the Regional Chief, Social Security Administration, Philadelphia, Pennsylvania; David C. Weiss, United States Attorney for the District of Delaware, Wilmington, Delaware; Heather Benderson, Special Assistant United States Attorney, Office of the General Counsel, Philadelphia, Pennsylvania, Attorneys for Defendant.

February 12, 2019
Wilmington, Delaware

*Rowanrd A. Andrews* (signature)

**ANDREWS, U.S. District Judge:**

Plaintiff, Tammy Harvey, who appears *pro se*, appeals the decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1381-1383f. Jurisdiction exists pursuant to 42 U.S.C. § 405(g). Presently pending before the Court are cross motions for summary judgment filed by Harvey and the Commissioner. (D.I. 13, 14). Briefing is complete.

**I.      BACKGROUND**

**A.      Procedural History**

Harvey filed for SSI benefits on October 9, 2013, alleging disability as of October 19, 2010 due to paranoid schizophrenia and other functional psychotic disorders and substance addiction/dependence disorders (alcohol). (D.I. 11-5 at 2-8; D.I. 11-8 at 2-10). Her application was denied on January 24, 2014, and upon reconsideration on April 2, 2014. (D.I. 11-5 at 2-21) Two administrative hearings were held before an Administrative Law Judge, the first on June 1, 2016, and the second on September 19, 2016.[1] (D.I. 11-3 at 2-85). Testimony was provided by Harvey, vocational expert Victor Alberigi, and Harvey's friend Mark Turulski.[2] The ALJ issued a decision on October 28, 2016, finding that Harvey was not disabled. (D.I. 11-2 at 17-33). She sought review by the Appeals Council, submitted additional evidence, and her request

---

[1] The first hearing was continued to provide Harvey an opportunity to obtain needed medical records.

[2] Turulski initially represented Harvey as her non-attorney representative, but during the second hearing Harvey chose to waive her right to representation and Turulski testified.

was denied on July 26, 2017, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 2-5). On September 5, 2017, Harvey filed this action seeking review of the final decision. (D.I. 1).

B.    **Plaintiff's Testimony**

Harvey was born in 1973 and was 43 years old at the time of the ALJ's decision (D.I. 11-2 at 27). She completed 10th grade and has no past relevant work experience. (D.I. 11-3 at 27-28). She may have a GED. (*Id.* at 28). Harvey testified that, for the past three years, she had lived with Turulski. (*Id.* at 6, 29). Harvey testified that she has a driver's license but had not driven in quite awhile. (*Id.*). Harvey has three children, two of whom are grown. (*Id.*) She has no relationship with her grown children and has not seen her youngest child for at least three years. (*Id.* at 30, 36-37).

Harvey was asked why she thought she was unable to work, and she replied, "[w]ell, it's not that I don't think I can work. I just have, sometimes, trouble with transportation." (*Id.* at 33). When asked what she did during the day, Harvey stated that she sometimes cooks breakfast, does crossword puzzles, plays Solitaire, watches a lot of television, and if someone asks her to do something, she will. (*Id.* at 36).

At the hearing Harvey testified that she was still drinking alcohol. She drinks at least a 12-pack every day, and drinks it "like it was tea." (*Id.* at 8, 41). Harvey could not remember a period in the past year when she was sober, without having had anything to drink. (*Id.* at 44). She testified that she is seen by a physician who helps her with her schizoaffective disorder but is not sure how the disorder affects her. (*Id.* at 37-38). She takes medication that helps her sleep. (*Id.* at 37). Harvey believes her

bipolar disorder cause her to awaken at odd times during the night. (*Id.* at 38-39). She testified that post-traumatic stress disorder means she is stressed out or depressed. (*Id.* at 39).

## C. Turulski's Testimony

Turulski testified that Harvey used alcohol to self-medicate and had not been drinking as regularly since she had been placed on Latuda.[3] (*Id.* at 58). Turulski testified that Harvey's last period of sobriety was "last summer when she went about three months." (*Id.* at 58-59). Harvey described the difference when Harvey takes Latuda as, "before the Latuda, she would wake up miserable, maybe because it was because of the lack of sleep. And since Latuda, she really doesn't wake up miserable, most of the time. Every once in a while, – nobody's perfect. She'll have a bad day . . . . I know that she's improved ever since the Latuda." (*Id.* at 59-60).

## D. Plaintiff's Medical History, Condition, and Treatment

On February 12, 2012, Harvey presented to the emergency department for a psychiatric evaluation after police found her found walking in the road, far from her house, and she had been hit by a car. (D.I. 11-12 at 36). Harvey appeared intoxicated and was unable to give a reliable history. (*Id.*) She acknowledged that she drank eight cans of beer per day. (*Id.* at 35). Diagnoses included depressive disorder, alcohol intoxication, and adjustment disorder with disturbance of conduct. (*Id.* at 38).

---

[3] This medication is used to treat certain mental/mood disorders (such as schizophrenia, depression associated with bipolar disorder). *See* https://www.webmd. com/drugs/2/drug-155134/latuda-oral/details (last visited Jan. 23, 2019).

3

On October 6, 2012, Harvey was taken to the emergency room by police after she was found on the porch of a former acquaintance with multiple bruises in various stages of healing. (*Id.* at 13). Harvey stated that "she got the bruises because she 'exercises too much and I run into things.'" (*Id.*). She admitted to drinking six beers that day and that she typically drank six beers daily. (*Id.*).

On March 18, 2013, Harvey presented to the emergency room for evaluation of altered mental status. (*Id.* as 2-4). She was confused, disoriented, and unable to give a reliable history. (*Id.* at 2). Harvey's mother indicated that Harvey had stopped taking her medication for schizophrenia. (*Id.*). Harvey admitted to "chewing bath beads" and drinking alcohol that day. (*Id.*). Discharge summary was alcohol-induced psychosis, psychotic disorder, alcohol intoxication, altered mental status, reported bath salts intoxication, and alcohol intoxication delirium. (*Id.* at 6). Harvey was discharged, to be transferred to a psychiatric facility to be determined. (*Id.*).

On April 30, 2013, Harvey was admitted to Dover Behavioral Health Systems ("DBH"). (D.I. 11-10 at 5). She was admitted with complaints of depressed mood, disorganized thoughts, confusion, an attempt to walk into traffic, and non-compliance with medication. (*Id.*). Harvey's fiancé reported that she goes to her neighbor's house to drink. (*Id.*). Diagnoses included psychosis, not otherwise specified; rule out

4

schizophrenia, disorganized type; and a GAF of 25.[4]  (*Id.* at 8-9).  When Harvey was discharged on May 3, 2013, her GAF was 60.[5]  (*Id.* at 5).

On May 6, 2013, Harvey was brought by ambulance to the emergency room. (D.I. 11-11 at 64).  She stated that she did not know who called the ambulance, and she wanted to go to DBH for detox and psychiatric evaluation.  (*Id.*).  She had been arguing with her boyfriend, admitted to drinking four beers, and appeared intoxicated. (*Id.*)  She indicated that she drank a twelve pack per day until she was at DBH the prior week.  (*Id.*).  Harvey was transferred to Psychiatric Facility Recovery Center of Delaware.  (*Id.* at 70).

On May 11, 2013, Harvey was brought to the emergency room by the police department for intoxication and possible pills ingestion and psychiatric evaluation.  (D.I. 11-11 at 33).  She stated she had four beers that day and was unable to give an adequate history.  (*Id.* at 33).  Bruising was noted on her back, but Harvey denied knowing how she got the bruising.  (*Id.* at 35).  Harvey was triaged and taken to the main emergency department where she was checked on frequently and remained for

_____

[4] With a GAF of 21 to 30, "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (*e.g.*, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (*e.g.*, stays in bed all day; no job, home, or friends)."  DSM-IV-TR, p.34.

[5] With a GAF of 51 to 60, "'moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). DSM-IV-TR, p.34.

several hours. (*Id.* at 34-35). Harvey left the emergency room without medical approval. (*Id.* at 35). The discharge diagnosis was acute alcohol intoxication. (*Id.* at 41).

On May 21, 2013, Harvey was brought to the emergency room by the police for a psychiatric evaluation. (*Id.* at 25). She complained of "having a lot of confusion," being compliant with medications, admitted to drinking that day, and appeared intoxicated. (*Id.*). Diagnoses included alcohol intoxication, cannabis abuse, history of depression, non-compliance with medication regimen, alcoholism, and psychotic disorder. (*Id.* at 29). Harvey was transferred to Psychiatric Facility Recovery Center of Delaware. (*Id.*)

On August 23, 2013, Harvey was taken to the emergency room by the police for a psych evaluation after she was found intoxicated in public. (D.I. 11-10 at 13). She admitting to drinking a six pack of beer that day and appeared obviously intoxicated. (*Id.*). Discharge diagnoses included schizophrenia; alcoholism; alcohol intoxication; and thought disorder due to alcoholism, not schizophrenia. (*Id.* at 15-16). The discharging physician noted that Harvey was "off her meds" and "being enabled by another guy with her when drinking." (*Id.* at 15). The note continued that she did not have a history of schizophrenia and the current incident clearly indicated a thought disorder due to alcohol. (*Id.*).

Harvey was admitted to Bayhealth Medical Center on August 27, 2013, for agitation and altered mental status. (D.I. 11-11 at 15). She was found trespassing on

someone else's property, intoxicated, and agitated. (*Id.*). The diagnosis was alcohol intoxication with a past history of schizophrenia. (*Id.*).

The next day, Janis Chester, M.D., evaluated Harvey regarding alcoholism and schizophrenia. (*Id.* at 18). Dr. Chester noted that Harvey had been treated for polysubstance dependence, primarily alcohol, for "some years" and had been addicted to alcohol since age 21. (*Id.*). Dr. Chester noted that Harvey had been brought in by the police due to public intoxication on a least two occasions, including the current admission. (*Id.*). Harvey had a history of suicidal ideation and suicidal attempts while intoxicated, and she denied signs or symptoms suggestive of depression, mania, or psychosis. (*Id.*) Dr. Chester stated that Harvey trivialized the factors leading up to the current admission, was not interested in a referral for any type of formal treatment and was not interested in accepting the telephone number for Alcoholics Anonymous. (*Id.*). The diagnostic impression was alcohol dependence and no history of schizophrenia. (*Id.* at 19).

Joseph Keyes, Ph.D., performed a consultative psychological evaluation on March 25, 2014. (D.I. 11-12 at 50). Harvey reported that she lived with her boyfriend/fiancé and he had driven her to the evaluation. (*Id.*). She stated that she was independent in self-care skills and able to perform routine household/domestic chores and tasks. (*Id.* at 52).

Harvey provided a long history of alcohol abuse and reported drinking more than six beers a day. (*Id.* at 51). She admitted to drinking two beers that morning before her 9:00 a.m. appointment. (*Id.*). She provided a history of psychiatric

hospitalizations, with her last hospitalization in April 2013 at DBH. (*Id.* at 50-51). Diagnoses included schizophrenia, multiple episodes, in partial remission; and alcohol use disorder, moderate. (*Id.* at 53).

Dr. Keyes estimated that Harvey had: moderate impairment in her ability to relate to other people; mild impairment in restriction of daily activities; no deterioration of personal habits; and moderate impairment in constriction of interests. (*Id.* at 54). He estimated Harvey had: mild impairment to understand simple, primarily oral, instructions; moderate impairment to carry out instructions under ordinary supervision, and to sustain work performance and attendance in a normal work-setting, and to perform routine, repetitive tasks under ordinary supervision; and moderately severe impairment to cope with pressures of ordinary work. (*Id.* at 55). In addition, Dr. Keyes stated that Harvey was capable of managing her own funds except that she was not capable of managing funds during acute schizophrenic episodes because of disorganized/bizarre thinking and behavior. (*Id.*).

On August 25, 2014, after Harvey was found intoxicated and wandering on private property. She was brought by police to the emergency room and then admitted to DBH for detox. (D.I. 11-13 at 4). Harvey reported bruising and poison ivy on her face but did not know how she got either of them. (*Id.*). Adrienne M. Yourek, M.D., performed a psychiatric assessment upon admission. (*Id.* at 4-7). Although the record included a history of schizophrenia, Dr. Yourek found no evidence from Harvey to support any current psychotic symptoms. (*Id.* at 4). Harvey acknowledged that she

8

was drinking six to twelve beers daily. (Id.). Admitting diagnoses included alcohol dependence and alcohol withdrawal and a GAF of 28.[6] (Id. at 6).

On September 3, 2014, Dr. Yourek completed a discharge summary and noted that during the course of her hospital stay, Harvey's cognition improved. (Id. at 2-3). Upon discharge, her attitude was cooperative, her motor behavior was within normal limits, her mood was mildly anxious, her affect was congruent, her speech was within normal limits, her thought process was concrete, her thought content was focused, she was alert and oriented to person, place, and time, her insight was impaired, her judgment was fair, and her reliability was moderate. (Id. at 2). Discharge diagnoses included alcohol dependence; alcohol withdrawal, resolved; alcohol withdrawal delirium, resolving; and depressive disorder, not otherwise specified. (Id.). Her GAF was 35.[7] Harvey was discharged with a referral to the Center for Mental Wellness ("CMW") for medication management and therapy. (Id. at 3).

When Harvey saw therapist Sandhya Verma-Higgins at CMW on January 14, 2015, she reported that she was not drinking as much as before and had no blackouts or run-ins with the police. (D.I. 11-13 at 63). Harvey reported that she spent her time

---

[6] See n.4.

[7] With a GAF of 31 to 34, "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR, p.34.

9

at home doing dishes, cleaning, and "picking up," which she did not like doing, and that she enjoyed playing solitaire. (*Id*.).

A mental status examination revealed that Harvey was alert/oriented to person, place, and time. (*Id*.). Her mood was anxious; affect was flat; psychomotor activity was agitated; she had loose associations; her attention/concentration was fair; her impulse control was fair; her speech was slowed; her memory was slightly impoverished; her thought content was within normal limits; and she seemed confused throughout the session and hesitant at times. (*Id*.). Harvey did not appear to be under the influence of any substance. (*Id*.).

On March 3, 2015, Harvey was seen by social worker Faye B. Friedman at the CMW for an initial evaluation. (D.I. 11-13 at 18). Harvey reported a history of treatment but was vague about why she wanted to switch counselors. (*Id*.). She was accompanied by a male friend and reported that she was not currently on medication but, when he left the room, indicated that he did not want her to take the medication and had taken it from her in the past. (*Id*.). She reported she had taken Campral[8] and Vivitrol[9] injections in the past, thought they were helpful, and would like to take them again. (*Id*.).

---

[8] Campral is indicated for the maintenance of abstinence from alcohol in patience with alcohol dependence who are abstinent at treatment initiation. *See* https://www.rxlist. com/campral-drug.htm#indications (last visited Jan. 23, 2019).

[9] Vivitrol is indicated for the treatment of alcohol dependence in patients who are able to abstain from alcohol in an outpatient setting prior to initiation of treatment with Vivitrol. Patients should not be actively drinking at the time of initial Vivitrol

10

Harvey reported that she had been arrested and was currently on probation with a "zero tolerance" policy for alcohol. (*Id.* at 19). She indicated she had not had a drink in a month. (*Id.*). Harvey denied suicidal ideation, homicidal ideation, self-destructive behaviors, and violent behaviors. (*Id.*) A mental status examination revealed that she was cooperative and friendly, with normal motor activity. (*Id.* at 23). Her speech was coherent and relevant; her range of affect and mood were normal; preoccupation, delusions, and hallucinations were absent; her level of consciousness was alert; she was fully oriented to person, place, and time; her concentration was adequate; her memory was intact; her impulse control was fair; and her insight was fair to poor. (*Id.*). Diagnoses included anxiety; and alcohol dependence, in early full remission. (*Id.* at 24).

On April 15, 2015, Harvey was seen by nurse practitioner Michele Gillespie at the CMW for follow-up care. (D.I. 11-13 at 30-31). Harvey denied depression, anxiety, or alcohol use. (*Id.* at 30). She reported that her energy was good. (*Id.* at 31). She was cooperative during a mental status examination; her psychomotor activity was within normal limits; her affect was sad; her mood was sad and anxious; she was alert and fully oriented; her attention/concentration was within normal limits; her impulse control was poor; and her judgment/insight was impaired. (*Id.*). She reported that she was not taking any medication. (*Id.*). Diagnoses included alcohol dependence not

administration. *See* https://www.rxlist.com/vivitrol-drug.htm#indications (last visited Jan. 23, 2019).

elsewhere classified and not otherwise specified; and generalized anxiety disorder. (*Id*.).

On February 3, 2016, social worker Kim Bursler completed a one-page form for Delaware Health and Social Services, Division of Social Services and noted that Harvey could not work at her usual occupation and could not perform any other work on a full-time basis. (*Id*.). The same day when Bursler saw Harvey for an office visit, Harvey stated, "I drink too much—6 beers a day." (D.I. 11-13 at 53-56). Bursler's notes indicate that she completed the form for Harvey so that she could "get her food stamps turned back on," although Harvey could not provide clear information about how she lost the food stamps. (*Id*. at 55). Harvey told Bursler that she was "feeling good today". (*Id*.). She reported that she spent her day being "lazy," tried to walk on the treadmill, and enjoyed Family Feud. (*Id*.).

Harvey was seen by Khaled S. Mirza, M.D. on April 2, 2016 for a psychiatric evaluation. (D.I. 11-12 at 58-61). Dr. Mirza noted Harvey's past psychiatric history of bipolar affective disorder and schizoaffective disorder. (*Id*. at 58). Dr. Mirza noted that Harvey had been psychiatrically hospitalized many times and recorded her drug and alcohol history as "a social drinker". (*Id*.). Diagnoses included schizoaffective disorder (D/O) bipolar type most recent episode (MRE) depressed, and generalized anxiety disorder (GAD). (*Id*. at 60). Dr. Mirza started Harvey on Latuda. (*Id*.)

When Harvey saw Bursler on April 18, 2016, she once again stated, "I drink too much, 6 beers a day". (D.I. 11-13 at 43). Her mood was anxious and confused; her affect was inappropriate to topic; her psychomotor activity was agitated; she had loose

12

associations; she was not hallucinating; she was having paranoia described as "delusions suspicious;" her memory was greatly impaired; and her thought content was neither suicidal nor homicidal. (*Id.* at 43-44). The diagnosis was schizoaffective disorder, depressive type. (*Id.* at 44).

When Dr. Mirza saw Harvey for follow-up care on May 1, 2016, she reported that she was "doing well". (D.I. 11-13 at 25). Her boyfriend reported that she liked Latuda, which kept her calmer. (*Id.*). Harvey denied agitation, restlessness, irritability, or audio/visual hallucinations (AVH), but had internal preoccupation. (*Id.*). Mental status examination revealed that her mood was "OK," her affect was dysthymic, and she had no delusions or suicidal/homicidal thoughts or ideation. (*Id.*). The diagnosis was schizoaffective disorder, affective type, and there was no reference to alcoholism or alcohol addiction/abuse. (*Id.*).

The next day Harvey was seen by Bursler. (*Id.* at 41-42). Mental status examination revealed that Harvey was alert/oriented to person, place, situation, and time. (*Id.* at 41). Her mood was anxious and confused; her affect was inappropriate to topic; her psychomotor activity was agitated; she had loose associations; she was not hallucinating; she was having paranoia described as "delusions suspicious;" her memory was greatly impaired; and her thought content was neither suicidal nor homicidal. (*Id.* at 41-42). Diagnosis was schizoaffective disorder, depressive type. (*Id.* at 42). Bursler made no reference to alcoholism or alcohol addiction/abuse. (*Id.* at 41-42).

13

On May 20, 2016, Jack Milligan, M.D., performed a physical examination at CMW. (*Id.* at 75-77). Harvey provided a social history that she "drinks alcoholic beverages". (*Id.* at 75).

On June 25, 2016, Harvey saw Dr. Mirza and told him she had had a Social Security hearing on June 1, and the judge was currently deciding her case. (D.I. 11-14 at 16). Dr. Mirza diagnosed schizoaffective disorder, affective type. (Id.). He made no made no reference to alcoholism or alcohol addiction. (*Id.* at 16-17). Upon review to the Appeals Council, Harvey submitted a one-page report prepared by Dr. Mirza dated November 22, 2016. (D.I. 11-4 at 25.) The report states that Harvey is unable to work due to severe and persistent mental illness. (*Id.*).

## E. Vocational Expert's Testimony

A vocational expert testified at the administrative hearing. (D.I. 11-3 at 53-57). It was noted that Harvey had no past relevant work and a limited education. The VE was asked how many unexcused or unscheduled absences employers would customarily tolerate from their employees per month in order for the employee to be able to maintain competitive employment and the VE responded "for most people it's probably one day a month." (D.I. 11-3 at 54).

The VE was posed a hypothetical:

assume an individual the same age, education, work experience as this particular claimant and can perform work at all exertional levels, and work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements, involving on[ly] simpl[e] work-related decisions and routine workplace changes, with no direct interaction with the public and only occasional interaction with the coworkers. No past work available. Are there other unskilled jobs in the national economy that such a hypothetical person could perform?

14

(D.I. 11-3 at 54-55). The VE responded the individual could perform light unskilled jobs as housekeeper, sometimes known as a hotel room cleaner or office cleaner, a packager, and laundry sorter. (Id. at 55-57).

## II. LEGAL STANDARD

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." See 42 U.S.C. § 405(g); see Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence does not mean a large or a considerable amount of evidence. Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Credibility determinations are the province of the ALJ. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). They should be disturbed on review only if they are not supported by substantial evidence. Pysher v. Apfel, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001).

## III. REGULATORY FRAMEWORK

Within the meaning of social security law, a "disability" is the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. See 42 U.S.C. §1382c(a)(3). To be found disabled, an individual must have a "severe impairment"

15

which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." *See* 20 C.F.R. § 416.905. The claimant bears the initial burden of proving disability. *See* 20 C.F.R. §, 416.905; *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984). To qualify for disability insurance benefits, the claimant must establish that she was disabled prior to the date she was last insured. *See* 20 C.F.R. § 416.912(a); *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

To determine disability, the Commissioner uses a five-step sequential analysis. *See* 20 C.F.R. § 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. *Smith v. Commissioner of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 416.920(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 416.920(a)(4)(ii) (requiring finding of not disabled when claiman:'s impairments are not severe). If claimant's impairments are severe, at step three the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are

16

presumed severe enough to preclude any gainful work.[10]   See 20 C.F.R. §

416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428.   When a claimant's impairment or its

equivalent matches an impairment in the listings, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.920(a)(4)(iii).   If a claimant's impairment, either singly or in

combination, fails to meet or medically equal any of the listings, the analysis continues

to steps four and five.   *See* 20 C.F.R. §§ 404.1520(d), 416.920(e).[11]

At step four, the Commissioner determines whether the claimant retains the RFC

to perform her past relevant work.   *See 20 C.F.R. § 416.920(a)(4)(iv) (stating a*

claimant is not disabled if able to return to past relevant work).   "The claimant bears the

burden of demonstrating an inability to return to her past relevant work."   *Plummer*, 186

F.3d at 428.   If the claimant is unable to return to her past relevant work, step five

requires the Commissioner to determine whether the claimant's impairments preclude

her from adjusting to any other available work.   *See* 20 C.F.R. § 416.920(g) (mandating

that a claimant is not disabled if the claimant can adjust to other work); *Plummer*, 186

F.3d at 428.   As previously stated, at this last step the burden is on the Commissioner

to show that the claimant is capable of performing other available work before denying

disability benefits.   *See id.*   In other words, the Commissioner must prove that "there

---

[10] Additionally, at steps two and three, claimant's impairments must meet the
duration requirement of twelve months.   *See* 20 C.F.R. § 416.920(a)(4)(ii-iii).

[11] Prior to step four, the Commissioner must assess the claimant's RFC.   *See*
20 C.F.R. § 416.920(a)(4).   A claimant's RFC is "that which an individual is still able to
do despite the limitations caused by his or her impairment[s]."   *Fargnoli v. Massanari*,
247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett v. Commissioner of Soc. Sec. Admin.*,
220 F.3d 112, 121 (3d Cir. 2000)).

prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC.]"  *Id.*  This determination requires the Commissioner to consider the cumulative effect of the claimant's impairments, and a vocational expert is usually consulted.

The ALJ utilized the sequential evaluation process and determined that:   (1) Harvey had not engaged in substantial gainful activity since October 9, 2013, the application date; (2) she had the severe impairments of alcohol dependence, major depressive disorder, generalized anxiety disorder, schizoaffective disorder, posttraumatic stress disorder, and bipolar disorder; (3) if she stopped the substance abuse, she would have the residual functional capacity to perform work at all exertional levels, however she should be limited to performing simple, routine and repetitive tasks in an environment free of fast-paced production requirements involving only simple work related decisions and routine workplace changes with no interaction with the public and only occasional interaction with coworkers; (4) if she stopped the substance abuse and considering her age, education, work experience, and residual functional capacity, there are significant number of jobs in the national economy that she could perform and, thus is not disabled; and (5) the substance abuse disorder is a contributing factor material to the determination of disability because Harvey would not be disabled if she stopped the substance abuse.   (D.I. 11-2 at 19, 27, 28).

## IV.   DISCUSSION

Harvey filed her Complaint *pro se*.   Therefore, the Court must liberally construe

her pleadings, and "apply the applicable law, irrespective of whether she has mentioned it by name." *Holley v. Department of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999); *see also Leventry v. Astrue*, 2009 WL 3045675 (W.D. Pa. Sept. 22, 2009) (applying same in the context of a social security appeal).

Harvey contends the ALJ erred in finding her not disabled because he did not properly read or review the materials and did not consider or give appropriate weight to the medical records of Dr. Mirza who diagnosed her as unable to work. (*See* D.I. 1; D.I. 13). Harvey also contends she is disabled because the State of Delaware "considers her disabled." (D.I. 13).

The Commissioner argues that disability cannot be based on alcoholism or drug addiction, the ALJ considered all the evidence and accorded appropriate weight to the evidence in the record, Harvey fails to present a viable argument to refute the ALJ's well-reasoned decision, and certain evidence cannot be considered by the Court as it was submitted for the first time to the Appeals Council.

## A. Substantial Evidence

On March 29, 1996, Congress amended the Social Security Act to preclude the award of benefits to claimants who are disabled by alcoholism or drug addiction. *See* 42 U.S.C. § 423 (d)(2)(C) (an individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled).

19

The final responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner. *See Breen v. Commissioner of Soc. Sec.*, 504 F. App'x 96 (3d Cir. 2012) (citing 20 C.F.R § 404.1546(c)). Here, the ALJ considered the effects of Harvey's condition in relation to her ability to perform work. It is clear in reading the ALJ's decision that he thoroughly reviewed and considered the medical records submitted. He noted the records show that Harvey has underlying mental health impairments in addition to significant alcohol dependence.

The ALJ considered Harvey's testimony where she indicated she would like to work but could not due to lack of transportation. She denied ever hallucinating, but reported problems communicating. She admitted to continuing to drink alcohol daily – a least a 12-pack per day. The ALJ also considered Harvey's longstanding chronic alcohol abuse with only one period of sobriety in late 2014 and early 2015. In addition, the ALJ fully detailed Harvey's mental health treatment, which included care provided by Dr. Mirza, and observed that Harvey did not fully disclose to Dr. Mirza the degree of her dependence and alcohol abuse. The ALJ also detailed the mental health treatment Harvey received from other mental health care providers.

With regard to medical opinions, an ALJ is free to choose one medical opinion over another where the ALJ considers all of the evidence and gives some reason for discounting the evidence he rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer*, 186 F.3d at 429 ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.").

Harvey contends the State of Delaware considers her disabled. To the extent she relies upon the opinions of social worker Bursler in this regard, those opinions were considered by the ALJ and only given some weight. The ALJ detailed his reasons for giving Bursler's opinions only some weight, noting that a social worker does not qualify as an acceptable medical source under the Commissioner's regulations, 20 C.F.R. § 416.913(a). (*See* D.I. 11-12 at 26). SSR 06-3p draws a distinction between "acceptable medical sources" and other health care providers, like social workers, who are not "acceptable medical sources."[12] *See* 2006 WL 2329939, at *2.

Bursler's statement indicated Harvey could not perform any occupation for more than twelve months. The ALJ considered Bursler's statement with respect to impairment severity and functional effects and explained that Bursler's statement did not assess Harvey's functional capacities. (D.I. 11-2 at 26). The ALJ observed that Bursler's statement that Harvey's limitations were due entirely to schizophrenia was inconsistent with the other substantial evidence of record which showed that Harvey's mental health symptoms were due in part to her substance abuse. (*Id.*).

Harvey also contends that her longtime physician, Dr. Mirza, diagnosed her as disabled. The ALJ was provided medical records that indicated Harvey was seen by Dr. Mirza on April 2, 2016, May 1, 2016, and June 25, 2016, (D.I. 11-14 at 16-22). Dr. Mirza diagnosed schizoaffective disorder, depressive type. (*Id.*). The ALJ referred to

---

[12] SSR 06-3p was in effect at the time of the ALJ's decision. It has since been rescinded for claims filed on or after March 27, 2017. *See* Notices, Social Security Administration, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01, 2017 WL 1105348.

the April and May visits in his decision noting that Harvey's condition had improved with medication. Notably, Dr. Mirza did not diagnose Harvey "as disabled" at any of these visits.

Presumably, Harvey is referring to Dr. Mirza's November 22, 2016 one-page report that she submitted to the Appeals Council. The Appeals Council considered the evidence, and it denied Harvey's request for review. Dr. Mirza's November 22, 2016 report was submitted for the first time to the Appeals Council after the ALJ issued his decision finding Harvey not disabled. When a claimant submits evidence after the ALJ's decision, that evidence cannot be used to "argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

The substantial evidence of record supports the ALJ's decision. The ALJ thoroughly analyzed the medical evidence and considered the medical opinions in determining that Harvey's substance use disorder was a contributing factor material to the determination of disability. The ALJ appropriately relied upon the testimony of the VE. Accordingly, the Court finds that substantial evidence supports the ALJ's ruling and his evaluation of Harvey's residual functional capacity.

## B.    Sentence Six Remand

Pursuant to 42 U.S.C. § 405(g), sentence six, this Court may order a remand based upon evidence submitted after the ALJ's decision, but only if the evidence satisfies three prongs: (1) the evidence is new; (2) the evidence is material; and

22

(3) there was good cause why it was not previously presented to the ALJ.   *Matthews*,

239 F.3d at 593-94.

Harvey has not alleged that remand is warranted under sentence six of 42 U.S.C.

§ 405(g).   However, she has submitted new evidence dated from April 11, 2017 to

August 29, 2017.   (*See* D.I. 2).   The evidence is new and, hence, is not material to her

claim for benefits filed on October 9, 2013.   "[A]n implicit materiality requirement is that

the new evidence relate to the time period for which benefits were denied, and that it not

concern evidence of a later-acquired disability or of the subsequent deterioration of the

previously non-disabling condition."   *Szubak v. Secretary of Health and Human Servs.*,

745 F.2d 831, 833 (3d Cir. 1984); *see also Nieves v. Commissioner of Soc. Sec.*, 198 F.

App'x 256, 260 n.3 (3d Cir. 2006) ("Our determination [that the ALJ's decision in 2001

was based on substantial evidence] is in no way swayed by the fact that in October of

2003 an ALJ determined that the petitioner was disabled.   As per 42 U.S.C. § 405(g),

[the court's] review is limited to the evidence in the record at the time of the 2001

decision of the ALJ and [it is] therefore not required, nor able, to consider this

subsequent ALJ ruling when rendering [its] decision.").   In addition, Harvey provided no

explanation, much less good cause, for her failure to present the records she filed in

support of her motion for summary judgment.   The Court finds no basis to remand

pursuant to the sixth sentence of 42 U.S.C. § 405(g).[13]

_____

[13]Plaintiff has available the option of filing a new application should she believe
the new evidence supports an award for disability insurance benefits.   *See* 20 C.F.R. §
416.330(b).

**V.     CONCLUSION**

For the reasons discussed above, the Court will:   (1) deny Harvey's motion for summary judgment (D.I. 13); and (2) grant the Commissioner's cross-motion for summary judgment (D.I. 14).

A separate order will be entered.